IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **WALTER MICHAEL MURPHY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil Action No. 3:20-00613 |
| ) | |
| **PRIMECARE**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendant PrimeCare Medical's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 36), filed on December 15, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant PrimeCare Medical's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant in moving to dismiss. (Document No. 40.) On January 5, 2021, Plaintiff filed his Response in Opposition. (Document No. 41.) Defendant PrimeCare Medical filed its Reply on January 12, 2021, and Plaintiff filed his Surreply on January 25, 2021. (Document Nos. 42 and 48.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant PrimeCare Medical's above Motion should be granted.

## PROCEDURAL BACKGROUND

On September 17, 2020, Plaintiff, acting *pro se*,[1] filed his Motion to Proceed Without

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983. (Document Nos. 1 and 3.) In his Complaints, Plaintiff alleges that PrimeCare Medical has violated his constitutional rights under the Eighth Amendment by failing to provide him with colostomy bags in a timely manner. (Document Nos. 1, 4, and 9.) Plaintiff states that he has been required to wait for hours/days for a new colostomy bag and his colostomy bag busted on one occasion. (Id.) Plaintiff alleges that on July 4, 2020, he requested a colostomy bag from medical staff during the 8:00 a.m. "medication pass." (Id.) Plaintiff states that medical staff informed him that they would bring Plaintiff a colostomy bag at the 10:45 a.m. "lock down count." (Id.) Plaintiff contends that when he did not receive the colostomy bag the 10:45 a.m. count, he inquired of CO Daniels and CO Shannon. (Id.) Plaintiff claims that CO Daniels and CO Shannon called medical and were informed that "they were coming with it." (Id.) Plaintiff, however, alleges that he had not receive the colostomy bag at 3:45 p.m. (Id.) Plaintiff, therefore, states that informed the correctional officers that his colostomy bag had "busted and leaked all over [him]." (Id.) Plaintiff states that at 4:00 p.m., Lt. Erwin "came to Section A-1 and demanded [Plaintiff] to lock down." (Id.) Plaintiff contends that he "then began to explain that [he] couldn't lock down in [his] cell with [his] cellie with human feces all over [him] and tried to explain to him that was how Hepatitis A was spread." (Id.) Plaintiff claims that Lt. Erwin and Officer Danials then sprayed Plaintiff with pepper spray and "took [him] up front where [Plaintiff] then sit two more hours without changing [his] colostomy bag." (Id.) Plaintiff contends that at this point, his colostomy bag had been busted for ten hours. (Id.) Plaintiff alleges that he requested Lt. Erwin to photograph the busted colostomy bag. (Id.) Plaintiff acknowledges that Lt. Erwin took photographs and then took Plaintiff to the restroom where Plaintiff was allowed to change his colostomy bag before being placed in segregation. (Id.) As relief, Plaintiff requests monetary damages. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Rule Violation Report" dated July 4, 2020 (Document No. 1, p. 4 and Document No. 27, p. 4.); (2) A copy of Plaintiff's "Inmate Grievance Form" dated July 8, 2020 (Document No. 1, p. 5 and Document No. 27, p. 3.); (3) A copy of Plaintiff's notes regarding medical staff's alleged failure to timely provide colostomy bags (Document No. 1, pp. 6 – 9 and Document No. 27, pp. 5 – 10, 12.); (4) A copy of Plaintiff's "Inmate Grievance Form" dated September 28, 2020[2] (Document No. 27, p. 11.); and (5) A copy of Plaintiff's Witness List (Id., p. 13.)

By Order entered on October 6, 2020, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue a summons for each named defendant, and directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaints upon each named defendant.[3] (Document No. 12.) On December 15, 2020, Defendant PrimeCare Medical filed its "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 36 and 37.) Defendant PrimeCare Medical argues that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff fails to state a claim upon which relief can be granted (Document No. 37, pp. 2 – 4.); (2) Plaintiff failed to exhaust his administrative remedies (Id., pp. 4 – 6.); (3) PrimeCare Medical is not a "person" subject to suit under Section 1983 (Id., pp. 6 – 8.); (4) "Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 8 – 10.); (5) "Alternatively, PrimeCare should be awarded summary judgment" (Id., p. 10.) As an Exhibit, Defendant PrimeCare Medical attaches a copy of Plaintiff's medical records. (Document

---

[2] Plaintiff's "Inmate Grievance Form" dated September 28, 2020, was clearly filed after he initiated the above action on September 17, 2020. (Document No. 27, p. 11.)

[3] By Order entered on March 26, 2021, Defendants Western Regional Jail, Erwin, Colman, Danials, Shannon, Pauley, Alan, and Gram were terminated as defendants. (Document No. 63).

No. 36-1.)

Also on December 15, 2020, the above civil action was transferred from Judge Eifert to the undersigned for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document Nos. 38 and 39.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 16, 2020, advising him of the right to file a response to the Defendant PrimeCare Medical's Motion. (Document No. 40.) On January 5, 2021, Plaintiff filed his Response in Opposition. (Document No. 41.) On January 12, 2021, Defendant PrimeCare Medical filed its Reply. (Document No. 42.) On January 25, 2021, Plaintiff filed his Surreply. (Document No. 48.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison

---

[4] 42 U.S.C. § 1997e(a) provides as follows:
   No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA")

requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or Bivens action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the

federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative

9

remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

West Virginia Division of Corrections Policy Directive 335.00 (codified in the W. Va. Code of State Rules), which was in effect at the time of the incident described in Plaintiff's Complaints, sets forth the administrative remedy process. An inmate initiates the administrative process by filing a grievance.[5] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code R. § 90-9-4.1. Only one issue or complaint may be grieved per form, and

---

[5] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

the inmate must submit it to his/her Unit Manager. Id. § 90-9-4.2 – 4.3. The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. Id. § 90-9-4.5. Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. Id. § 90-9-5.1. "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Id. § 90-9-5.4. Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." Id. § 90-9-6.1. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete. "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." Id. § 90-9-6.4.

Defendant PrimeCare Medical argues that the face of Plaintiff's Complaints reveal that Plaintiff did not fully exhaust his available administrative remedies. (Document No. 36 and Document No. 37, pp. 4 – 6.) Plaintiff fails to address the foregoing issue in his Response in Opposition and Surreply. (Document Nos. 41 and 48.) In his Complaints, Plaintiff acknowledges that he did not fully exhaust his available administrative remedies. (Document Nos. 1, 4 and 9.) In his Amended Complaint, Plaintiff states he "told them what was happening" but the result was "nothing." (Document No. 4, p. 3.) In his Second Amended Complaint, Plaintiff states that he presented facts relating to his Complaint in the state prisoner grievance process by filing a grievance. (Document No. 9, p. 3.) Plaintiff states that the result of his grievance was "they said an inmate can not consider any discipline for staff." (Id.) As an Exhibit, Plaintiff attaches a copy of his "Inmate Grievance Form." (Document No. 1, p. 5 and Document No. 27, p. 3.) Thus, it is

apparent from the face Plaintiff's Complaints that Plaintiff failed to fully exhaust his administrative remedies prior to filing the above action. See Custis, 851 F.3d. at 361; Banks, 694 Fed. Appx. at 160. As stated above, an inmate must first submit a grievance to his Unit Manager. The Unit Manager has five days to respond to the grievance. If the inmate receives an unfavorable response from the Unit Manager, the inmate may appeal to the Warden/Administrator within five days of the receipt of the Unit Manager's decision. If the inmate does not receive a response at the expiration of the time limit at any stage of the process, the inmate may move to the next stage of the grievance process. In the instant case, it is clear from the face of Plaintiff's Complaints that he failed to appeal the Unit Manager's unfavorable decision to the next level. Plaintiff's Complaints reveal that Plaintiff decided to forego the administrative remedy process after he did not receive a favorable response to his initial grievance. The undersigned, therefore, respectfully recommends that Defendant PrimeCare Medical's Motion be granted and Plaintiff's Complaints be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA and the WVPLRA. The undersigned finds it unnecessary to consider the other reasons that Defendant PrimeCare Medical has submitted for dismissal of Plaintiff's claim.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant PrimeCare Medical's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 36), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert

C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 11, 2021.

Omar J. Aboulhosn
United States Magistrate Judge